## JONES' HEIRS v. BARNETT'S HEIRS.

The statutes of descents and distributions, in all countries, are mere arbitrary rules, established by law, for the regulation of the course which property shall take upon the death of the owner or possessor.

Where there are neither lineal descendants in the ascending or descending line, nor brothers and sisters or their descendants, laws have generally traced out uncles, aunts, and nephews on the paternal and maternal sides, and fixed upon the inheritors of the estates.

Uncles, aunts, and nephews all take the estate in coparcenary, and their interests are joint, but unequal in quantity. They acquire their rights at the

same time and by the same title. But it cannot be affirmed that each nephew, under our statute of descents and distributions, is entitled to the same quantity of estate as each uncle and aunt.

The 4th subdivision of the 2d section of the statute of descents and distributions reads as follows: "If there be none of the kindred aforesaid, then the inheritance shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred, in the following course, that is to say: to the grandfather and grandmother, in equal portions; but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to such survivor, and the other shall go to the descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants, then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no surviving grandfather or grandmother, then the whole of such estate shall go to their descendants, or to such of them as there be, and so on without end, passing in like manner to the nearest lineal ancestors and their descendants, or to such of them as there be." (Paschal's Dig., Art. 3419, Notes 783, 784, 785.) It was the intention to destroy all distinction between the relations on the father's side and those on the mother's side, because more in consonance with our policy.

By this provision, *ipso facto*, two estates are created for different objects, with no bond of union, except through the intestate; and to find these objects we ascend, first, to the father, and if he have no descendants we go no higher, but descend through all the line which have had their origin in him and the mother as a common stock, and trace down each of those lines, until the first living descendant is found in each, which will determine the true inheritor in that line. If the father or mother be alive, a second division of that moiety of the estate is made, and the creation of two estates out of that moiety, one of which goes to the survivor, and the other to the descendants of the deceased parent. The whole estate means nothing else than the whole of the moiety.

Where uncles and nephews were the only heirs, the uncles took *per capita*, and the nephews *per stirpes*, or as representatives.

ERROR from Fort Bend. The case was tried before Hon. GEORGE SCHLEY, one of the district judges.

The whole record of the estate was brought up, but no point in it, except the canon of descent, stated by the judge.

The arguments were all able, but they were principally upon the construction of the statutes.

*George Quinan,* for plaintiff in error, argued the case upon the statute of descents and distributions.

*Atkins & Holt,* and *T. N. Wall,* for defendants in error.

LINDSAY, J.—The question presented by the record in this case for our consideration is, the true and proper construction of the statute of descents and distributions upon the following state of facts:

William Barnett died intestate in the year 1865, without leaving a wife surviving him, without issue, and without lineal ancestors; but leaving eleven uncles and aunts and two nephews in being at the time of his death, who were his nearest of kin, and therefore were alone the takers of his estate by inheritance. Eight of the uncles and aunts and the two nephews were of the maternal kindred, and the two other aunts and the uncle were of the paternal kindred.

The object sought by this writ of error is, the rule of partition and distribution among these heirs-at-law of the intestate.

It will be readily conceded that these uncles, aunts, and nephews are the only persons who can take by inheritance from the intestate, and they are not kindred in an equal degree. By the common law the uncles and aunts are kindred in the first degree, and the nephews in the second degree. By the civil law the uncles and aunts are related in the second degree, and the nephews in the third degree. But whether the relationship be computed by the canon of the common or the civil law, their respective portions of the inheritance are the same.

The statutes of descents and distributions in all countries are mere arbitrary rules, established by law for the regulation of the course which property shall take upon the death of the owner and possessor; and these rules are made to avoid the strifes and contentions which would ensue upon its necessary abandonment by death of the first holder, among those who might struggle to become the successors or seek to get possession. They are rules, therefore, estab-

lished by society, or civil government, for its own peace and tranquillity, and not because any particular person or class of persons possess any natural right to the succession or inheritance. But in adopting such rules it will be found that all governments or legislatures, in prescribing determinate methods for the transmission of property, have uniformly availed themselves of a law of physics, which is unerring in its operations, and not fickle and capricious, like the passions and sentiments of mankind, to render that transmission fixed and certain, and easily traceable by that natural law. That law is the law of consanguinity, or of blood. This law is always combined with the arbitrary municipal rule which determines the amount of the inheritance to be taken by the object thus sought out by the physical law. In this case, this law has traced out the uncles, aunts, and nephews on the paternal and maternal sides, and fixed upon the inheritors of the estate. And the question to be determined in the construction of the statute is, the portion of the estate which each is entitled to. Uncles, aunts, and nephews all take the estate in coparcenary; and their interests are joint, but unequal in quantity. They acquire their rights at the same time and by the same title. But it cannot be affirmed that each nephew, under our statute of descents and distributions, is entitled to the same quantity of estate as each uncle and aunt.

According to the facts of this case, there being neither children nor their descendants, nor brothers and sisters nor their descendants, nor any lineal ancestors of the intestate, in being at the time of his death; and his nearest collateral kindred in being when he died being these uncles, aunts, and nephews, it brings us directly to the consideration of the 4th subdivision of the 2d section of the statute of descents and distributions, (Paschal's Dig., p. 558,) which reads as follows: "If there be none of the kindred aforesaid, then the inheritance shall be divided

into two moieties, one of which shall go to the paternal, and the other to the maternal kindred, in the following course, that is to say: To the grandfather and grandmother, in equal portions; but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to such survivor, and the other shall go to the descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants, then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no surviving grandfather or grandmother, then the whole of such estate shall go to their descendants, or to such of them as there be, and so on without end, passing in like manner to the nearest lineal ancestors and their descendants, or to such of them as there be."

In this portion of the statute, there is no doubt in our minds, it was the intention of the legislature to destroy effectually all discrimination or distinction between the relations on the father's side and those on the mother's side, because more in consonance with the general principles of American institutions and laws in regulating rights of property. It was to break down the more thoroughly the ideas and maxims of inheritance having their origin in the policies of the feudal system, and with which our civil polity, in all its departments, was deeply imbued, in consequence of the sources from which we mainly derived it.

Considering that the blood of the intestate flowed equally in the veins of the maternal as well as in the paternal kindred, and thereby a rightful heir might be as well traced through the one line as the other, and, as a rule of property, it would be as fixed and determinate as any other rule, and more consonant with the general American system of more universal diffusion of property, the legislature very wisely, as we think, established this rule as a law of descent and distribution in this State, which certainly puts

xxx—41

it, as a law of property, more in harmony with our general system of laws.

By this provision, in a state of case like the present, the property of the intestate is divided into moieties. This division, by operation of law, *ipso facto*, creates two distinct estates, as a father by his will creates two estates when he gives to his son his farm in the country, and to his daughter his mansion house in the city. The one division, creating distinct estates, is effected by operation of law; the other, by the act of the party. They are distinct estates, being destined by the law for different objects, having no bond of union except through the intestate. When we start out to trace, by the physical law, under the mandate of the statute, the objects who are to take the inheritance, we are directed, first, to ascend to the father, and if he have descendants, we mount no higher up the ancestral line, but then descend through all the lines which have had their origin in him and the mother, as a common stock, and trace down each of those lines till the first living descendant is found in each, which will determine the true inheritor in that line.

If the father or the mother be alive, the statute suggests a pause there, and a second division of that moiety of the estate is made, and the creation of two estates out of that moiety, one of which goes to the survivor and the other to the descendants of the deceased parent. And if there be no descendants of the deceased parent, then the "whole estate" (which can mean nothing else than the whole of the moiety, already created by operation of law under such physical state of facts) is to be inherited by the surviving parent, thus putting a stop, by the express language of the statute, to the further progress of the inheritance. But when there are no descendants of such deceased parents, we are directed by the statute to mount one step higher in the lineal ascent, and, *mutatis mutandis*, the same process of tracing the lines of descent to find the objects of the in-

heritance from the grandfather and grandmother is pre-
scribed as from the father and mother, and the objects are
ascertained in the same way, and the inheritance takes
effect in each of the lines of descent thus traced to the first
living object found in those lines.   But it has to be borne
in mind that the investigator takes along with him in
tracing each of these lines, the paternal and the maternal,
the moiety which the law has already assigned to them
respectively, and when objects are thus found the portions
of inheritance belonging to each is delivered over to him.
When there is no grandfather or grandmother, nor their
descendants, a like process must be observed in still ascend-
ing the ancestral line, and descending from each step in the
ascent, till living objects can be arrived at to take the in-
heritance, always ascending a step higher in the lineal
ascent and descending each line emanating from such
stock, if such there be, and, in the explicit language of the
statute, "so on without end, passing in like manner to the
nearest lineal ancestors and their descendants, or to such of
them as there be."   This rule of descent, though specially
defined for one branch or line of the kindred, is equally
applicable to both, and a double definition of the rule by
the statute would have been supererogatory.   We have no
difficulty, therefore, in coming to the conclusion that, from
the facts of this case, the estate was first divisible into
moieties, one of which goes to the uncles and aunts of the·
paternal kindred, and the other to the uncles and aunts,
and the nephews and nieces of such of them as were dead at
the death of the intestate, such nephews and nieces taking,
as joint representatives of their immediate ancestors, the
share to which they would have been entitled if living.
Wherefore the judgment of the district court is reversed,
and the cause is remanded, with directions that a judgment
be entered in that court affirming the judgment of the
county or probate court.

                              ORDERED ACCORDINGLY.