ANNIE ESTES, APPELLANT, VS. CHARLOTTE H. NICHOLSON, JOSIE M. WINTER AND ALBERT WINTER, HER HUSBAND, APPELLEES.

DESCENT—DIVISION INTO MOIETIES AND HOW EACH MOIETY DESCENDS—KINDRED OF THE HALF-BLOOD—SECTIONS 1820 AND 1823 REVISED STATUTES CONSTRUED.

1. The provision of law contained in section 1820 of the Revised Statutes, to the effect that if an interstate decedent leaves surviving him or her neither husband or wife, nor children or their decendants, nor father or mother, nor brother or sister, or their decendants, the inheritance shall be *divided into moieties*, one of which shall go to the *paternal*, and the other to the *maternal* kindred, is imperative, and creates, under the circumstances intended to be met thereby, practically *two distinct estates*, the one falling to the *paternal* kindred, the other to the *maternal;* and the directions following this provision in the law are designed to give the course that *each* of the two moieties shall *separately* take after the division into moieties. The inheritance, after once being divided into moieties can not be again united and descend in one line until there ceases to be a representative of the other line. So long as there is any kindred, however remote, on the one side or the other, he, she or they take one of the moieties to the exclusion of the kindred on the other side, who are entitled exclusively to the other moiety.

2. The provision in section 1823, Revised Statutes, directing that collaterals of the half-blood should inherit only half as much as

collaterals of the whole blood, was not designed to annul the provision in section 1820 Revised Statutes that casts the estate *by moieties* respectively upon the paternal and maternal kindred; nor does it have the effect, where the collateral kindred on the one side are of the whole blood and those on the other side are of the half-blood, to reunite the moieties of the estate so as to give out of the *whole* thereof double portions to the kindred of the whole blood. The purpose of the said section 1823 is not to qualify, limit or disturb the provision of the previous section 1820 dividing the estate into moieties and casting them, as two separate and distinct estates respectively upon the paternal and maternal kindred; but its provisions, when applied to cases where a division of the estate into moieties has taken place, are intended to deal with the two moieties as being still *two separate and distinct estates*, and, in such cases, amount simply to additional directions as to the course that *each of said separate moieties* shall respectively take when those entitled to share in the one or the other thereof are found to be kindred only of the half-blood. When the division by the law into moieties takes place the casting by such law of the one moiety upon the *paternal* kindred *excludes all* of the maternal kindred from any share or interest therein, until, and only until, it is found that there is no kindred, however remote, on the paternal side to inherit such moiety; and so, *vice versa*, with the moiety cast by the law upon the kindred on the *maternal* side. The fact that the kindred on the one side are relatives of the intestate only of the half-blood, does not give to kindred on the other side of the whole blood any right to share in the distinctive moiety that the law casts upon the parental stock to which such half-bloods belong.

Appeal from the Circuit Court for Jackson county.

STATEMENT.

The appellant, Annie Estes, as complainant in the court below, on the 19th day of April, 1893, filed her bill in equity in the Circuit Court of Jackson county for the partition of lands against the appellees, in which it is alleged that Thomas M. White, Jr., late a

citizen of Jackson county, Florida, died intestate on or about the 20th day of March, A. D. 1893, owning and possessing in fee simple at the time of his death divers tracts and lots of land located in said Jackson county that are particularly described in the bill. That the said Thomas M. White, Jr., at the time of his death left no will, nor did he leave a wife, child, brother, sister, father, or mother, nor any descendant thereof surviving him. That the grandfather of said descendant was Thomas M. White, Sr., who died about the year 1880, prior to the grandson. That the said Thomas M. White, Sr., at the time of the death of said Thomas M. White, Jr., had no surviving children nor any descendants thereof, except your oratrix, who is a daughter of said Thomas M., Sr., and a sister of the half-blood to the father of said Thomas M. White, Jr. That the grandmother of said Thomas M. White, Jr., was the defendant Charlotte H. Nicholson, who survived him. That said Charlotte H. Nicholson at the time of the death of said Thomas M., Jr., had no children, nor descendants of any children surviving, except the defendant Josie M. Winter, who is a daughter of said Charlotte H. Nicholson, and a sister of the whole blood to the mother of said Thomas M., Jr. That upon the death of said Thomas M., Jr., intestate, the inheritance in the lands and tenements aforesaid did, under the laws of descent of this State become divided into moieties or halves, one of which went to the complainant, and the other to the defendants Charlotte H. Nicholson and Josie M. Winter, in parcenary, in the following proportions, that is to say: an undivided one-half interest in all said lands and tenements to the complainant, and an undivided one-fourth interest therein to each of said defendants

Charlotte H. Nicholson and Josie M. Winter. That to the best of complainant's knowledge the defendants are all over the age of twenty-one years and reside in Thomasville, State of Georgia. That the complainant and said two defendants are the only persons interested in the said lands, and that the quantity or proportionate share to which each of them is entitled therein is as before stated. That said Thomas M. White, Jr., left no grandfather on his mother's side surviving him, nor did he leave a grandmother on his father's side surviving him. The bill prays for a partition of the lands in consonance with the allegations of the bill as to the proportions to which the parties are respectively alleged to be entitled, and, in the event a fair and equitable division can not be effected thereof in specie, that said lands be sold for partition.

The defendants answered jointly admitting all the allegations of the bill as to the ownership of the property by Thomas M. White, Jr., his death, intestacy, and the blood relationship to him of the parties complainant and defendants, and that they are all the persons in being entitled to distributive shares of his estate as alleged in the bill, but the answer disputes the claim made in the bill that the complainant is entitled to one-half of the lands belonging to said estate under the laws of descent of Florida, and sets up the claim that under said laws the complainant, being an aunt of the intestate only of the half blood, is entitled out of said lands to only one-ninth thereof, and that Josie M. Winter, being an aunt of the intestate of the whole blood, is entitled to two-ninths thereof, while the remaining six-ninths thereof descends to the defendant Charlotte H. Nicholson, who is the maternal grand-

mother of the intestate, and heir in the ascending line within the provisions of the laws of descent.

The case was heard upon bill and answer, and on the 30th day of September, 1893, a decree of partition was rendered adjudging to Annie Estes, the complainant, one fifth interest in said lands, and to each of the defendants, Charlotte H. Nicholson and Josie M. Winter, two-fifths interest therein, and appointing three commissioners to so divide the same in severalty. From this decree the complainant Annie Estes entered an appeal to this court, which, for convenience of reference, will be referred to as appeal No. 1. The commissioners in partition made written report to the court on March 30th, 1894, that the lands were so situated that partition thereof as directed could not be made without great prejudice to the parties interested, and recommended that the same be sold under the direction of the court so that the proceeds might be divided between the parties entitled thereto. To this report of the commissioners no objection was made by any of the parties, and on the 7th of April, 1894, another decree was rendered, upon the application of the complainant in the bill, ordering said lands to be sold at public sale by the said commissioners for partition, after four weeks' advertisement of such sale, and, the parties all agreeing thereto ordering that the sale be made upon the terms of one-third in cash, and the residue of the purchase price to be paid in equal installments on October 1st, 1895, and on October 1st, 1896, with legal interest from date of sale, and secured by mortgage on the property; and that the proceeds of the sale should be paid by the commissioners into the registry of the court for division between the said parties entitled thereto.

On the 5th of June, 1894, said commissioners made their report to the court that they had advertised and sold the lands as directed at public outcry for the aggregate sum of $2,605 to one Thomas E. Blackshear, who was the highest bidder therefor, and that he had paid to them in cash $868.34, being one-third of his bid, and stood ready to execute his bond and mortgage as security for the deferred balance of his bid in the event the sale should be confirmed.

On the same day, June 5th, 1894, all parties being notified, and no objection being made by any one, the judge rendered another decree confirming the sale made by the commissioners, and authorizing them to execute a deed of conveyance to the purchaser, with directions to take from him his bond and mortgage on the lands for the deferred balance, and to turn the cash payment into the registry of the court.

Afterwards, on the 9th of July, A. D. 1894, another decree was rendered by the judge directing that the cash payment in the hands of the registrar of the court be paid over in conformity to the original decree of partition adjudging the interests of the respective parties, one-fifth to the complainant Annie Estes, and two-fifths thereof to each of the defendants, Charlotte H. Nicholson and Josie M. Winter, and that the registrar or clerk of the court should collect the deferred payments secured by the mortgage as they fell due, and should pay over the same to the said parties when collected in the same proportions. From this decree the complainant Annie Estes also took her appeal to this court, which, for convenience of reference, we will designate as appeal No. 2.

Mr. Justice Carter being disqualified in this case, took no part in the consideration thereof.

*Francis B. Carter* and *Benj. S. Liddon*, for Appellant.

*D. L. McKinnon*, for Appellees.

TAYLOR, C. J.:

No complaint is made of the sale of the lands involved for partition, or of the confirmation thereof by the court upon the terms and at the price for which they were sold. All parties seem to be satisfied that the sale for partition as made and confirmed shall stand undisturbed. The sole contention here is, that the court below erred in its construction of our statute of descents, in adjudging to the complainant Annie Estes only a one-fifth interest in the lands and its proceeds that belonged to the intestate estate, she claiming that, as she is the sole surviving heir at law of the intestate on the paternal side, she inherits and is entitled to one moiety, or one-half, of his estate in Florida under its statute of descents.

The bill alleges, and the answer admits, that Thomas M. White, Jr., died about March 20th, 1893, intestate, owning the lands described in the bill located in Florida. That at his death he left surviving him neither wife, child, brother, sister, father or mother, nor any descendant thereof. That the grandfather of said decedent was Thomas M. White, Sr., who died about the year 1880, prior to the decease of his grandson, the said Thomas M., Jr. That the said Thomas M. White, Sr., at the time of the death of said Thomas M., Jr., had no surviving children, nor any descend-

ants thereof, except the complainant Annie Estes, who is a daughter of said Thomas M. White, Sr., and sister of the half-blood to the father of the said Thomas M., Jr. That the defendant Charlotte H. Nicholson is the grandmother of the said intestate Thomas M., Jr., and that said Charlotte H. Nicholson, at the time of the death of said intestate, had no children, nor descendants of any children, surviving, except the defendant Josie M. Winter, who is a daughter of said Charlotte H. Nicholson, and a sister of the whole blood to the mother of said Thomas M., Jr.

Section 1820 of our Revised Statutes provides as follows: "Whenever any person having title to real estate of inheritance shall die intestate as to such estate, it shall descend in parcenary to the male and female kindred in the following course, that is to say: To the children or their descendants and the husband, if the decedent be a married woman and the husband survive her. If there be no children or their descendants, and the decedent be a married woman and her husband survive her, all the property, real and personal, shall go to the husband; and if there be no children or their descendants, and the decedent be a married man and his wife survive him, all his property, real and personal, shall go to the wife. If there be no children and no husband or wife, then to the father. If there be no father, then to the mother, brothers and sisters and their descendants, or such of them as there may be. If there be no brother nor sister, nor their descendants, the inheritance shall be divided into moieties, one of which shall go to the paternal, and the other to the maternal kindred in the following course, viz: First to the grandfather. If there be no grandfather, then to the grandmother,

uncles and aunts on the same side or their descendants, or such of them as there be. If there be no grandmother, uncle nor aunt, nor their descendants, then to the great-grandfathers, or great-grandfather, if there be but one. If there be no great-grandfather, then to the great-grandmothers, or great-grandmother, if there be but one, and the brothers and sisters of the grandfathers and grandmothers and their descendants, or such of them as there be. And so in other cases without end, passing to the nearest lineal male ancestors, and for the want of them to the lineal female ancestors, in the same degree and the descendants of such male and female ancestors, or to such of them as there may be.''

Section 1823 of the Revised Statutes, upon which the court below evidently predicated its decree of adjustment between the parties, provides as follows: ''In the cases before mentioned, where the inheritance is directed to pass to the ascending and collateral kindred of the intestate, if part of such collaterals be of the whole blood to the intestate, and other part of the half-blood only, those of the half-blood shall inherit only half as much as those of the whole blood, but if all be of the half-blood, they shall have whole portions, only giving to the ascendants (if any there be double portions.''

The court below erred in its construction of this statute. The provision therein, to the effect that if there be neither husband or wife, nor children or their descendants, nor father or mother, nor brother or sister, or their descendants, the inheritance shall be *divided into moieties*, one of which shall go to the *paternal*, and the other to the *maternal* kindred, is

imperative, and creates, under the circumstances intended to be met thereby, practically *two distinct estates*, the one falling to the *paternal* kindred, the other to the *maternal;* and the directions following this provision are designed to give the course that each of the two moieties shall *separately* take after the division into moieties. The inheritance, after once being divided into moieties can not be again united, and descend in one line until there ceases to be a representative of the other line. So long as there is any kindred, however remote, on the one side or the other, he, she or they take one of the moieties to the exclusion of the kindred on the other side, who are entitled to the other. Cozzens v. Joslin, 1 R. I. 122; Jones' Heirs v. Barnett's Heirs, 30 Tex. 637. Brown v. Tuberville, 2 Call (Va.), 329.

The provisions in section 1823 Rev. Stats., quoted above, directing that collateral kindred of the half-blood should inherit only half as much as collaterals of the whole blood, was not designed to do away with the provision in section 1820, also quoted, that casts the estate *by moieties* upon the paternal and maternal kindred; nor does it have the effect, where the collateral kindred on the one side are of the whole blood, and those on the other side are of the half-blood, to re-unite the moieties of the estate so as to give out of the *whole* thereof double portions to the kindred of the whole blood. The real purpose of the said section 1823 is not to qualify, limit or disturb the provisions of the previous section 1820, dividing the estate into moieties and casting them, as two separate and distinct estates, respectively upon the paternal and maternal kindred, but its provisions, when applied to cases where a division of the estate into moieties has taken

place, are intended to deal with the two moieties as being still *two separate and distinct estates*, and, in such cases, amount simply to additional directions as to the course that *each of said separate moieties* shall respectively take, when those entitled to share in the one or the other thereof are found to be kindred only of the half-blood. When the division by the law into moieties takes place the casting by such law of the one moiety upon the *paternal* kindred *excludes all* of the maternal kindred from any share or interest therein, until, and only until, it is found that there is no kindred, however remote, on the paternal side to inherit such moiety; and so, *vice versa*, with the moiety cast by the law upon the kindred on the *maternal* side. The fact that the kindred on the one side are relatives of the intestate only of the half-blood, does not give to kindred on the other side of the whole blood any right to share in the distinctive moiety that the law casts upon the parental stock to which such half-bloods belong.

In the case at bar the complainant Annie Estes, being the only surviving relative of the intestate in the line of descent marked out by the law on the *paternal* side, is entitled to that moiety, *or one-half*, of all the estate in controversy that the law cast upon the *paternal* kindred, to the exclusion of all of the intestate's maternal relatives, and this notwithstanding the fact that she is the paternal aunt only of the half-blood to the intestate. The defendants Charlotte H. Nicholson and Josie M. Winter, being relatives of the intestate only through his mother, and being the only kindred in the line of descent as mapped out by the law to inherit the moiety cast thereby upon the maternal kindred, take the whole of

such moiety; but no more.    In the division of the one-moiety between the defendants Charlotte H. Nicholson and Josie M. Winter, they take equally, or that which is equivalent to one-forth each of the whole estate.    The provision in section 1823 of the Revised Statutes, giving to *ascendants* in the line of inheritance by collateral kindred double portions, applies only to cases where all of the inheritors on the same side are of the half-blood only.    Charlotte H. Nicholson, being the maternal grandmother of the intestate, takes an equal portion with her daughter Josie M. Winter, who is the maternal aunt of the intestate, under the provisions of section 1820 of the Revised Statutes.

The decree of the court below rendered on the 30th day of September, 1893, from which the appeal No. 1 was taken, and the decree rendered on July 9th, 1894, from which the appeal No. 2 was taken, are hereby reversed in so far as they adjudge to the complainant Annie Estes only a one-fifth interest in the whole of said estate, and to the two defendants Charlotte H. Nicholson and Josie M. Winter two-fifths interest each in the whole of said estate, with directions to enter decrees in their stead adjuding to the complainant Annie Estes one-half of the whole estate involved, and to the defendants Charlotte H. Nicholson and Josie M. Winter one-fourth each of the whole of said estate. In all other respects the decrees appealed from and all other orders and decrees in the cause are hereby affirmed.    The appellees are adjudged to pay the costs of these two appeals.